UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 22-cr-239 (RBW)** |
| v. | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | |
| **PAUL KOVACIK,** | : | **CASE NO. 24-cr-342 (RBW)** |
| | : | 18 U.S.C. § 3146(a)(2) |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum relating to defendant Paul Kovacik's role in the January 6, 2021, riot and his failure to appear and serve his sentence in his first criminal case. This Court originally sentenced Kovacik to a mix of imprisonment and probation for his unlawful parading, demonstrating, and picketing inside the U.S. Capitol on January 6 in violation of 18 U.S.C. § 5104(e)(2)(G). But Kovacik failed to appear to serve his sentence as ordered, and as a result he was charged with a violation of 18 U.S.C. § 3146(a)(2). On August 18, 2023, the D.C. Circuit also issued its decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), holding that the original sentence imposed was unavailable. Kovacik pled guilty to failure to appear on October 17, 2024, and at that time, this Court scheduled resentencing on the January 6 case (22-cr-239) to coincide with sentencing in Kovacik's failure to appear case (24-cr-342). This sentencing memorandum discusses both cases, and the Government requests that the Court maintain its prior sentence in case 22-cr-239, and sentence Kovacik to 12 months' incarceration, 36 months' supervised release, and a $25 special assessment on Count 1 in case 24-cr-342, to run consecutively to his prior custodial sentence.

I. **Factual and Procedural Background**

   a. <u>*Kovacik's Participation in the Riot on January 6, 2021*</u> **(22-cr-239)**

*Kovacik's Actions at the Capitol on January 6*

On January 6, 2021, after attending the "Stop the Steal" rally, Kovacik approached the U.S. Capitol from the West Lawn, climbed the Northwest stairs to the Upper West Terrace, and entered the Capitol building through the Senate Wing doors at approximately 2:26 p.m.



*Image 1: Kovacik's entry into the U.S. Capitol via Senate Wing Doors*

Kovacik traveled extensively throughout the building for the next 30 minutes while filming events on his cellphone. After entering through the Senate Wing doors, he moved with the flow of rioters, proceeding south toward the Crypt. At approximately 2:29 p.m., he boarded an elevator on the first floor in the Crypt with other individuals, including Zachary Alam, 21-CR-190 (DLF).

 

*Images 2-3: Kovacik entering an elevator in the Crypt (first floor) on the left; Kovacik and others exiting the elevator on the fourth floor on the right*

After exiting the elevator on the fourth floor, Kovacik proceeded to the H405 stairwell, and walked down one flight to the third floor. On the third floor, Kovacik and Alam headed north toward the Gallery Stairs. Standing in close proximity to Alam as the two stood over a railing looking down into the east front Rotunda interior, Kovacik looked on and filmed Alam throwing an object in the direction of police below. *See* Exhibit A at 27:00.



*Image 4: A screenshot of Kovacik's footage of Alam throwing an object off of a balcony*

Kovacik then headed south, walking through clearly private office corridors, randomly trying to open locked office doors as he traveled toward the House side of the Capitol. He then proceeded east to west through the House Gallery, and at the west stairs near House Room H219, he walked down one flight to the second floor.



*Image 5: Kovacik walking through the House Gallery*

On the second floor, Kovacik proceeded east, until a plainclothes security officer corralled him into the Statuary Hall connector where a large crowd of rioters had massed. The crowd soon pushed past the officers, spilling out into the House corridor. Kovacik moved with the surge, continuing east, entering the Sam Rayburn room for approximately one minute.



*Image 6: Kovacik entering the Sam Rayburn room*

Kovacik exited the Rayburn room and continued east to the Upper House doors. He remained in the corridor on the east side of the House chamber for approximately 12-15 minutes. During that time, Kovacik was part of a large mass of rioters that filled the area, screaming, chanting, and attempting to break down doors. In one of Kovacik's videos, titled "Can you find Ashli Babbit in the video, and notice what she is doing?," Kovacik stood by and filmed as rioters repeatedly tried to kick down a door. *See* Exhibit B at 4:30.


*Image 7: Screenshot of Kovacik's video of rioter kicking down door*

In the same video, the mass of rioters can be seen flooding the corridor, blocking officers attempting to respond to the shooting of Ashli Babbitt. *Id*.


*Image 8: Screenshot of Kovacik's video of rioters massed in House corridor*

The video also recorded the area where Ashli Babbitt was shot, capturing the aftermath of the shooting. *See* Exhibit B starting at 7:30.



*Image 9: Screenshot of Kovacik's video of Ashli Babbitt shooting aftermath*



*Image 10: Kovacik exiting the U.S. Capitol on the House Wing side*

7

At many points during the approximately 25 minutes that Kovacik was inside of the Capitol building, he stood in close proximity to other rioters, filming them as they attempted to break down doors and destroy property. Kovacik exited the East House front door at 2:54 p.m.

*Social Media Posts*

After the attack on the Capitol, Kovacik posted sixteen videos he had recorded on January 6, 2021, to his "Wisconsin's Game" YouTube account. On November 16, 2021, at the request of the FBI, Kovacik provided links to the recorded YouTube videos via email.

*Kovacik's Pre-arrest Interview with the FBI*

On November 16, 2021, Kovacik gave a voluntary pre-arrest interview to the FBI. During the interview, he stated that he took the train to Washington, D.C., and stayed there overnight on January 6, 2021. Kovacik's stated purpose for the trip to Washington D.C. was to witness the ratification of the Presidential electoral votes. He traveled alone and did not know anyone personally at the event. At approximately 1:30 pm, on January 6, 2021, Kovacik was leaving Union Train Station when he saw communications on Twitter that there was some commotion on the front lawn of the Capitol and people were entering the Capitol. According to Kovacik, these reports reminded him of the 1980's invasion of Romania, and believing this would be a historic event, he made his way over to the West Front of the Capitol. He reported seeing several hundred people gathering around the Capitol. Kovacik told FBI agents he was upset that the election was stolen and wanted to record history, and repeatedly emphasized that he was not there to destroy property or hurt anyone.

Kovacik reported seeing fences as he approached the West front doors of the Capitol, but claimed the fences were not put together. Kovacik reported hearing alarms sounding and observing

police officers near the entrances of the Capitol, but according to him, the officers were not actively denying anyone entry to the building.

According to Kovacik, the front doors to the Capitol were open, officers were encouraging people to enter, and the people that were entering the building were being respectful. This account of his entry into the U.S. Capitol is at odds with the video recording he made during his entry, which showed doors with broken glass and a large mob that police clearly did not welcome.

Kovacik recalled being with another individual whom he observed throw "some type of sticks" down a level towards police.[1] Kovacik identified that individual as Zachary Alam. Kovacik then made his way down to the second floor and described a commotion after learning that a girl had been shot.

*Procedural Background*

On May 10, 2022, the United States charged Kovacik by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On June 21, 2022, the FBI arrested Kovacik in the Southern District of Indiana. On July 12, 2022, the United States charged Kovacik by a 4-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 13, 2023, pursuant to a plea agreement, Kovacik pled guilty to Count 4 of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), and agreed to pay $500 in restitution to the Architect of the Capitol.

On June 21, 2023, this Court sentenced Kovacik to 90 days imprisonment followed by three years of probation. 22-cr-239, ECF No. 35. The Probation Office ordered him to report to the Metropolitan Correctional Center (MCC) in Chicago on August 22, 2023.

---

[1] After reviewing the YouTube videos provided by Kovacik, it is believed that the object he described is a velvet hanging stanchion rope. *See* Exhibit A at 27:00 (https://www.youtube.com/watch?v=xLKGBtHipck).

**b.** *<u>Kovacik's Failure to Appear for Sentence</u>* **(24-cr-342)**

*Factual Background*

As noted, the Probation Office initially ordered Kovacik to report to the MCC Chicago on August 22, 2023. Before his reporting date on August 21, 2023, Kovacik filed a motion to delay his self-surrender so that he could complete his seasonal employment at Six Flags amusement park and arrange travel to the designated confinement facility by his surrender date. ECF 37. On August 21, 2023, the Court granted Kovacik's request.[2] ECF 38.

The Probation Office set Kovacik's new report date to the MCC Chicago for November 1, 2023, and informed Kovacik of the new date by letter on October 2, 2023. The Probation Office also made numerous attempts via phone, text message, and email to contact Kovacik to ensure he was apprised of his new surrender date and location. The Probation Office was not successful in these attempts. Additionally, Kovacik did not contact the Probation Office to acknowledge his new surrender date.

Kovacik did not self-surrender to the Bureau of Prisons at the MCC Chicago on November 1, 2023, as ordered. Instead, Kovacik fled to Dublin, Ireland, through Munich, Germany, on November 1, 2023. Based on his failure to self-surrender, this Court issued an arrest warrant for Kovacik on November 21, 2023. Following the issuance of the arrest warrant, the United States Marshals Service undertook efforts to track and arrest Kovacik.

According to records obtained by U.S. Customs and Border Protection (CBP), Kovacik made plans to depart Ireland for the United States, and submitted to a preclearance interview that took place on June 19, 2024. During the interview, Kovacik advised that after arriving in Dublin,

---

[2] The D.C. Circuit published *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023) three days prior on August 18, 2023.

Ireland on November 2, 2023, he claimed asylum and applied for international protection with the Irish Government. Kovacik advised that he had remained in Ireland since November 2, 2023, but recently decided to voluntarily withdraw his asylum claim and return to the United States because he felt "homesick." Kovacik further advised that he left the United States because he "did not feel comfortable" and felt "unsafe." CBP confirmed an active warrant for Kovacik and coordinated a "Preclearance Alert Event" to execute the warrant upon Kovacik's arrival in the United States and allowed him to fly back to the United States on June 19, 2024.

When Kovacik arrived in the United States, a search of his luggage uncovered official documents relating to Kovacik's request to the Irish government for asylum, confirming his report that he had applied for protection from Ireland. On the requisite forms, Kovacik annotated that he wished to make an "Application for Declaration" for asylum and claimed, "[A] fear of persecution for reason of: political."

CBP promptly arrested Kovacik upon his return to the United States on June 19, 2024, and he was taken to the Hennepin County Jail. Following his arrest, Kovacik claimed to law enforcement that he was a "political prisoner." After a subsequent initial appearance and removal hearing in the District of Minnesota, the United States Marshal Service transported Kovacik to the MCC – Chicago to serve the custodial portion of his previously imposed sentence.

*Procedural Background*

On July 26, 2024, the United States charged Kovacik by criminal complaint with violating 18 U.S.C. § 3146(a)(2) for failing to surrender to the Bureau of Prisons on November 1, 2023.

Kovacik completed serving the original 90-day custodial sentence on September 8, 2024. The United States Marshall Service subsequently transferred Kovacik to Washington D.C. for the current proceedings where he remained in pretrial detention.

On October 17, 2024, Kovacik pled guilty to violating Section 3146(a)(2) without a plea agreement.

## II. The Government Recommends That the Court Maintain Its Prior Sentence *United States v. Paul Kovacik*, 22-cr-239.

After Kovacik was sentenced for his January 6 conduct, the D.C. Circuit issued its decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), finding that a split sentence of imprisonment and probation is unlawful. But while the government does not dispute that applies to Kovacik's original split sentence in case 22-cr-239, resentencing is not proper at this time since Kovacik has not filed a direct appeal or motion under 18 U.S.C. § 2255 challenging his sentence.[3] Accordingly, the government recommends that the Court not resentence the defendant and maintain its original sentence of 90 days of incarceration and 36 months of probation. And since Kovacik will have served his term of incarceration by the time of this sentencing hearing, that time should be credited leaving Kovacik to serve the remainder of his probation.

If, however, the Court finds that resentencing is proper, the government recommends that the Court resentence Kovacik in accordance with the statutory sentencing factors and impose a term of probation that will, including any credit for prior probation and incarceration, comport with the Court's original intention of Kovacik serving 36 months of probation. *See Little*, 2024 WL 181260, at *6 ("the Court may impose an additional punishment on Little so long as it appropriately credits the time Little served in prison and on probation against the punishment"); *United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (unlawful term of probation must be credited against any subsequent sentence of incarceration); *United States v. Lominac*, 144 F.3d

---

[3] The 2255 motion filed by the defendant on August 20, 2024, ECF No. 43, does not challenge his sentence, only the effectiveness of his counsel. Moreover, it was filed more than a year after judgment was imposed so it is time barred.

308, 318 (4th Cir. 1998) (unlawful term of supervised release must be credited against any subsequent sentence of incarceration). Additionally, since probation is a less restrictive penalty than incarceration, crediting time served on probation against a future term of incarceration, or crediting time incarcerated against a future term of probation, should not be "a day-to-day offset." *Martin*, 363 F.3d at 39. While the precise crediting ratio in this case is for the district court to consider, the specific ratio should derive from a "fact-based inquiry" that looks to "the specific conditions of [defendant's] probation and the effect of [any crediting] on the underlying purposes of the [sentencing statute] as set out in 18 U.S.C. 3553(a)." *Id.*

### III. The Government Recommends That the Court Sentence Kovacik To 12 Months' Incarceration in United States v. Paul Kovacik, 24-cr-342.

In addition to his resentencing in case 22-cr-239, Kovacik now faces sentencing on a single count of violating 18 U.S.C. § 3146(a)(2). Since Kovacik failed to surrender to the Bureau of Prisons following a sentence on a misdemeanor charge, as noted by the U.S. Probation Office, Kovacik faces up to 1 year of imprisonment, supervised release of not more than 1 year, and a fine of not more than $100,000. PSR ¶¶ 128, 131, 142.

#### a. The Sentencing Guidelines and Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the PSR's guidelines calculation. That Guidelines analysis, including the U.S.S.G. § 2A2.2(b)(1) enhancement, is as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2J1.6 | Base Offense Level | 11 |
| U.S.S.G. § 3E1.1(a) | Acceptance of Responsibility | -2 |
| | Total Adjusted Offense Level | 9 |

*See* 24-CR-342, PSR at ¶¶ 18-27.

The U.S. Probation Office calculated Kovacik's criminal history as 3 (Criminal History Category II). PSR ¶ 54. Accordingly, the U.S. Probation Office calculated Kovacik's total adjusted offense level, after acceptance, at 9, and his corresponding Guidelines imprisonment range at 6-12 months. PSR ¶ 129.

### b. Sentencing Factors under 18 U.S.C. § 3553(a)

Sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 12 months' incarceration and 36 months of supervised release.

#### 1. The Nature and Circumstances of the Offense

Following his guilty plea for his crimes on January 6, 2021, Kovacik knew he was ordered to report to the United States Bureau of Prisons (BOP) to serve his custodial sentence. He requested the Court delay his sentence to give him additional time to complete his employment. The Court approved his request and ordered a new report date of November 1, 2023. Thereafter, the United States Probation Office attempted to contact Kovacik and apprise him of his new surrender date. Kovacik ignored these efforts. Despite the Court's amenability to his delay request, Kovacik did not report to the BOP as ordered. Instead, he fled to Ireland, causing the United States Marshall service to commence an international manhunt to locate him.

Once Kovacik arrived in Ireland, he made his intention clear: he hoped to claim asylum as a supposed "political prisoner" to avoid accountability for his actions on January 6, 2021. To this end, he completed asylum paperwork with the Irish Naturalization and Immigration Service. Kovacik remained overseas for over 6 months before voluntarily returning to the United States.

Accordingly, Kovacik's actions established a clear contempt for the law and this Court's authority, establishing the need for a sentence of incarceration at the high end of the guidelines in this matter.

### 2. Kovacik's History and Characteristics

The government refers to its discussion of Kovacik's extensive criminal history in the sentencing memorandum filed in Kovacik's January 6 case. *See* 22-cr-239, ECF. No. 32 at 12. Kovacik's criminal actions following his guilty plea in case 24-cr-342 are unsurprising and consistent with his behavior over the last several decades warranting a significant sentence.

### 3. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by Kovacik. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

It is important for the public to respect the Court's authority and orders and understand the consequences of failing to do so. Specific to Kovacik, his previous criminal convictions and consequences have not deterred him from future criminal conduct. The government has already briefed the risks of Kovacik's high likelihood of recidivism and lack of deterrence. *See* 22-cr-239, ECF No. 32 at 13. Yet, Kovacik has continued to engage in criminal conduct, exemplified by the present case. Accordingly, in this case, the government submits a carceral sentence of 12 months,

15

at the high end of the guidelines range, is warranted by Kovacik's continued criminal acts and disdain for the rule of law and this Court's authority.

    **c.**    **Fine**

The defendant's convictions for violating 18 U.S.C. § 3146(a)(2) subject him to a statutory maximum fine of $100,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. PSR ¶¶ 122-127.

**IV.**    **Conclusion**

For the reasons set forth above, the government respectfully requests that the Court maintain Kovacik's original sentence in case 22-cr-239 and sentence Kovacik to 12 months' incarceration, 36 months' supervised release, and a $25 special assessment on Count 1 in case 24-cr-342, to run consecutively to his prior custodial sentence.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    s/ *Eli J. Ross*
        Eli J. Ross
        Assistant United States Attorney
        Illinois Bar Number 6321411
        United States Attorney's Office
        601 D. Street, N.W.
        Washington, D.C.  20001

Telephone: (202) 297-1515
Email: Eli.Ross@usdoj.gov